UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN E. GARIBAY<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-01226-AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").
(continued…)

1

## I. PROCEDURAL BACKGROUND

In 2010, before filing the SSI application at issue in this appeal, plaintiff filed a previous SSI application that was addressed in a May 20, 2011 ALJ decision finding plaintiff not disabled. Administrative Record ("AR") 14, 154-67.[2] Plaintiff's request for review of the ALJ's finding by the Appeals Council was denied, but he did not challenge the final decision in district court.

Rather, on June 20, 2014,[3] plaintiff filed a new application for SSI, which is the subject of the instant appeal. AR 14. Plaintiff alleged the same disability onset date of September 1, 2009. Id. The application was denied initially and on reconsideration. Id. On February 14, 2017 ALJ G. Ross Wheatley presided over a hearing on plaintiff's challenge to the disapprovals. AR 62-99 (transcript). Plaintiff was present and testified at the hearing. AR 62. He was represented by attorney Langley Kreuze at the hearing. Id. Timothy J. Farrell, a vocational expert, also testified at the hearing. Id.

On March 8, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 11-30 (decision). On April 12, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision).

Plaintiff filed this action on May 15, 2018. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383(c)(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 8. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 12 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion), 16 (plaintiff's response).

////
////
////

---

[2] The AR is electronically filed at ECF Nos. 11-1 to 11-13 (AR 1 to AR 693).
[3] Plaintiff's SSI application is dated January 12, 2016, but June 20, 2014 is the recognized claim date. AR 173-81, 200, 291.

2

## II. FACTUAL BACKGROUND

Plaintiff was born in 1970, and accordingly was 44 years old when he filed his application. AR 184. Plaintiff did not complete high school, but can perform simple math and communicate in English. AR 20, 68-69, 317, 319, 613.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

////

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

////

////

4

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

In evaluating mental impairments, at Step 3 the Commissioner applies a Psychiatric Review Technique ("PRT") to determine whether a claimant's impairments meet or equal a mental disorder listed in 20 C.F.R. pt. 404, Subpt. P, App. 1 ("Listings") §§ 12.00–12.15. In conducting the PRT, Social Security regulations mandate that consideration be given, among other things, to four functional areas: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). In rating a claimant's degree of limitation in these areas, the Commissioner uses a five-point scale of "None, mild, moderate, marked, and extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(c)(4).

The following Listings are at issue in this case: Listing 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), and 12.06

(Anxiety and obsessive-compulsive disorders). As discussed in more detail below, in order to meet the requirements of any of these three Listings, a claimant must satisfy the criteria in either paragraphs A and B or paragraphs A and C of the listing. See 20 C.F.R. pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04, 12.06.

## V. THE ALJ DECISIONS

In the May 20, 2011 decision regarding plaintiff's prior SSI application, ALJ Trevor Skarda found, as relevant to the instant case, that plaintiff had mental impairments of psychotic disorder and polysubstance abuse that were severe. AR 159. However, in the Step 3 PRT, ALJ Skarda found that plaintiff's mental impairments did not meet the criteria of any Listing because neither the paragraph B nor paragraph C criteria were satisfied. AR 161-62. The ALJ therefore proceeded to find plaintiff had the residual functional capacity to "perform a full range of work at all exertional levels" but was limited to "simple tasks; routine, repetitive tasks; and low stress work." AR 162.

On March 8, 2017, ALJ Wheatley issued his decision regarding the instant SSI application. ALJ Wheatley acknowledged ALJ Skarda's prior decision and found that, in addition to the previously identified severe mental conditions, plaintiff had additional severe impairments of obesity and lumbar spine degenerative disc disease that were not raised in the previous application. AR 14-15. Accordingly, ALJ Skarda's decision was not given res judicata effect.[4] As to the instant SSI application, ALJ Wheatley made the following findings:

> 1.[Step 1] The claimant has not engaged in Substantial Gainful Activity (SGA) since June 20, 2014, the application date (20 CFR 416.971 *et seq.*).
>
> 2.[Step 2] The claimant has the following severe impairments: Obesity, Lumbar Spine Degenerative Disc Disease (DDD), Affective Disorder, Anxiety Disorder, and Schizoaffective Disorder (20 CFR 416.920(c)).

---

[4] "Normally, an ALJ's findings that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date. However, the presumption does not apply where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (internal citations and quotation marks omitted).

| | 3.[Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). |
|---|---|
| | 4.[Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except can stand and/or walk for six hours out of an eight-hour workday; and can sit for six hours out of an eight-hour workday, all with normal breaks. The claimant should avoid exposure to hazardous machinery and unprotected heights. The claimant can perform simple work, defined as Specific Vocational Preparation (SVP) level 1 or 2 jobs, routine and repetitive tasks. The claimant is restricted to low stress jobs, can have occasional changes in the work setting, and can have occasional interaction with the general public. |
| | 5.[Step 4] The claimant is unable to perform any Past Relevant Work (PRW) (20 CFR 416.965). |
| | 6.[Step 5] The claimant was born on January 15,1970 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). |
| | 7.[Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 416.964). |
| | 8.[Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| | 9.[Step 5, continued] Considering the claimant's age, education, work experience, and Residual Functional Capacity (RFC), there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)). |
| | 10.The claimant has not been under a disability, as defined in the Social Security Act, since June 20, 2014, the date the application was filed (20 CFR 416.920(g)). |

AR 14-30.

At Step 3, ALJ Wheatley applied the PRT and found that the severity of plaintiff's mental impairments did not meet the criteria of Listings 12.04 (Depressive, bipolar and related disorders) or 12.06 (Anxiety and obsessive-compulsive disorders) because he had only "moderate" limitations in the four functional areas (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing

7

himself). AR 18-19; see 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E), (F)(2).

## VI. ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to properly credit the opinion of treating psychiatrist Dr. Jane M. Fernandez; (2) finding that plaintiff could perform light work; (3) discrediting plaintiff's subjective testimony; (4) failing to properly assess the lay evidence of record; and (5) concluding that there were other jobs in the national economy that plaintiff could perform. ECF No. 12.1 at 13-28. Plaintiff requests that the matter be remanded to the Commissioner for payment of benefits, or in the alternative, for further proceedings with the appropriate corrective instructions. Id. at 28. Because the court concludes that the ALJ improperly discredited the opinion of Dr. Fernandez—which, when credited, would require a finding of disability at Step 3—the following analysis is limited to plaintiff's first argument.

### A. The ALJ Improperly Weighted the Opinion of Plaintiff's Treating Psychologist

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Fernandez's opinion, and that her opinion should have been given controlling weight. ECF No. 12.1 at 9. Plaintiff contends that, if Dr. Fernandez's opinion is given controlling weight, then plaintiff satisfies the criteria of Listing 12.03 (Schizophrenia spectrum and other psychotic disorders) and must therefore be found disabled. Id. at 11. The court agrees.

#### 1. Relevant Medical Opinion Evidence

##### a. State Agency Psychological Consultants' Opinions

In February 2016, R. Singh, M.D., a State agency psychological consultant, conducted the Initial Review of plaintiff's application. Dr. Singh analyzed whether plaintiff met the criteria for Listings 12.03, 12.04, or 12.06. AR 191. In his PRT, Dr. Singh opined that plaintiff had "moderate" restrictions in activities of daily living; "moderate" difficulties in maintaining social functioning; and "moderate" difficulties in maintaining concentration, persistence, or pace. Id. Dr. Singh thus found that the paragraph B requirements were not satisfied; further found that the evidence did not establish the presence of paragraph C criteria; and adopted ALJ Skarda's prior PRT. AR 191-92.

////

At reconsideration in June 2016, Dara Goosby, Psy.D., another State agency psychological consultant, also adopted ALJ Skarda's prior PRT, finding paragraph B limitations identical to Dr. Singh's. AR 210.

### b. *Treating Physician's Opinions*

The record reflects that Dr. Jane M. Fernandez, M.D., treated plaintiff for his psychiatric conditions every one-to-three months since 2010. AR 44-48, 52, 459, 576, 588, 590, 618, 620-22. The earliest actual treatment notes from Dr. Fernandez in the record are from plaintiff's visit on December 10, 2015. AR 459-61. Her notes reflect diagnoses of psychotic disorder and major depressive disorder; increased anxiety and depression over the previous two weeks; recent improvement in auditory hallucinations; and continuation of episodes of yelling when alone. AR 461. That same day, Dr. Fernandez completed a one-page assessment of plaintiff on a Merced County Department of Child Support Services form. AR 480. Therein, Dr. Fernandez opined that plaintiff was "totally and permanently disabled" due to psychotic disorder and major depressive disorder, with onset in 2010. Id.

At plaintiff's subsequent visit on February 11, 2016, Dr. Fernandez noted that plaintiff had experienced increased anxiety and auditory hallucinations in December due to his brother's emergency surgery, but that his mood had stabilized with his brother's recovery. AR 576. She also noted that plaintiff was continuing to experience the urge "to yell out non-sensical phrases"; that he could usually suppress the urge in public; but that other times, such as in the waiting room that day, he still said the phrases, just more quietly than when at home. Id. She also noted that plaintiff was engaging in compulsive handwashing. Id. Dr. Fernandez recorded that plaintiff's diagnoses were "more likely schizophrenia, also likely OCD." Id. At visits in April 2016, October 2016, April 2017, and May 2017, Dr. Fernandez maintained plaintiff's diagnoses of schizophrenia, major depressive disorder, and obsessive compulsive disorder (OCD). AR 48-54, 590-91, 622-25. Her notes from these visits reflect that plaintiff's episodes of yelling decreased, at least in public; and his auditory hallucinations continued but were generally less severe. Id.

On April 12, 2016, Dr. Fernandez completed a Mental Impairment Questionnaire ("MIQ") in which she opined that plaintiff was: (1) mildly limited in activities of daily living,

9

(2) markedly limited in maintaining social functioning, and (3) markedly limited in concentration, persistence, or pace. AR 583. The MIQ defined "Markedly Limited" to mean that performance of the work-related mental function "is totally precluded on a sustained basis." AR 582.

### 2. The ALJ's Assessment of the Relevant Medical Opinions

The ALJ gave great weight to the opinions of the State psychologists, Drs. Singh and Goosby, without explanation. AR 25. In contrast, the ALJ gave only "little weight" or "some weight" to Dr. Fernandez's opinions for the following reasons: (1) disability determinations are reserved to the Commissioner; (2) the December 2015 opinion was made for child support enforcement purposes; (3) the objective evidence did not support a finding of total disability; and (4) there was no evidence that Dr. Fernandez is familiar with Social Security rules on disability. AR 28.

### 3. Discussion

The court concludes that these reasons do not adequately support the ALJ's decision to discount the opinion of Dr. Fernandez, plaintiff's treating psychologist. "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.' Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). However, when the ALJ resolves conflicts by rejecting the opinion of an examining or treating physician in favor of the conflicting opinion of another physician he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of

an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record."). Because Dr. Fernandez was plaintiff's treating psychologist, in rejecting her opinion in favor of the opinions of the State psychologists, the ALJ was required to provide "specific and legitimate" reasons supported by substantial evidence. See Carmickle, 533 F.3d at 1164. The ALJ failed to do so.

First, the ALJ stated that he discounted Dr. Fernandez's opinion because "the decision as to whether the claimant is disabled under Social Security is specifically reserved for the Commissioner." AR 28. This is an accurate statement of the law (as it stood at the time of the ALJ's decision). See 20 C.F.R. § 416.927(d) (discussing medical source opinions on issues reserved to the Commissioner, and providing that a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled).[5] However, this principle applies only to Dr. Fernandez's opinion in the December 2015 Child Support Services form that plaintiff was "totally and permanently disabled." AR 480. It does not apply to Dr. Fernandez's opinion regarding plaintiff's work-related mental limitations, provided in the April 2016 MIQ. AR 580-84. Thus, the ALJ's first justification does not provide a specific and legitimate reason for discounting Dr. Fernandez's April 2016 assessment.

Second, the ALJ reasoned that "the December 2015 opinion seemed to be made for the purposes of a child support obligation," and "[t]he standards of disability for child support enforcement are not necessarily the same as Social Security standards." AR 28. While that may well be the case, any discrepancy between child support and Social Security standards affects only the weight to be given to the December 2015 form, and is irrelevant to the April 2016 MIQ opinion. Accordingly, this is not a specific and legitimate reason for discounting Dr. Fernandez's April 2016 opinion as to plaintiff's mental impairments.

Third, the ALJ stated that "[t]he objective evidence does not support the finding of total disability." AR 28. Initially, it is unclear whether this statement was directed toward Dr. Fernandez's child support disability finding, or to her April 2016 mental impairment

---

[5] Revised versions of this and other Social Security regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date. See 82 Fed. Reg. 5844 (March 27, 2017).

assessment. In support of this statement, the ALJ merely provided a citation to treatment notes by Nurse Practitioner Skylar Loeb from plaintiff's visit on April 9, 2015 (AR 454) and then summarized Dr. Fernandez's treatment notes from a February 2016 visit. AR 28. In her notes from plaintiff's April 9, 2015 visit, Nurse Loeb stated that plaintiff was tolerating a transition between medications "with less psychosis and less compulsive [behavior]," but the court cannot divine how (or indeed, whether) the ALJ believed this statement conflicted with the opinions in Dr. Fernandez's April 2016 MIQ.

In apparent support of his conclusion that the objective evidence did not support Dr. Fernandez's opinion, the ALJ also provided the following summary of Dr. Fernandez's February 2016 treating records:

> The treating records of Dr. Fernandez from February 2016 showed a history of amphetamine use for three years prior to the onset of psychiatric symptoms. The claimant reported increased anxiety and auditory hallucinations in December after his brother had emergency surgery. His mood stabilized once his brother's health improved. The episodes of "yelling" continued and, when in public, he could usually suppress the urge to yell. Other times, such as in the waiting room today [meaning at Dr. Fernandez's clinic], he still yelled but more quietly than at home. He had other compulsions such as washing hands. Dr. Fernandez diagnosed the claimant with psychotic disorder, not otherwise specified; major depressive disorder, and borderline intellectual functioning. His diagnosis was more likely schizophrenia and likely Obsessive Compulsive Disorder (OCD) (Exhibit C6F, page 23).

AR 23. These statements accurately describe and, in some places, directly reproduce Dr. Fernandez's February 2016 treatment notes. AR 576. However, merely summarizing the contents of a provider's treatment notes does not provide insight into the ALJ's analysis of those notes. Again, the court cannot tell whether, or what part of, these notes the ALJ believed provided objective evidence inconsistent with Dr. Fernandez's findings of marked limitations in two core areas of mental functioning. It is possible that, as the government argues (ECF No. 15 at 13), the ALJ intended to provide evidence that plaintiff's condition had improved. However, the court cannot rely on the government's explanation to save the ALJ's unclear reasoning. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (stating that courts are required to "review the ALJ's decision based on the reasoning and factual findings offered by the

ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (stating that courts will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citing Connett, 340 F.3d at 874). Thus, the ALJ's third stated reason was insufficient because it lacked specificity.

Lastly, the ALJ's fourth stated reason for discounting Dr. Fernandez's opinions—her potential lack of familiarity with Social Security disability rules—is not, standing alone, a sufficient reason to discredit her opinion. Familiarity with Social Security programs and evidentiary requirements is only one of multiple factors the Commissioner must consider. See 20 C.F.R. § 416.927(c)(6). Furthermore, it is unclear how greater familiarity with Social Security rules might have altered Dr. Fernandez's opinion of plaintiff's limitations in the MIQ, since the form itself defined the various degrees of limitations from which Dr. Fernandez selected. AR 582-83; Lentz v. Comm'r, Soc. Sec. Admin., No. 4:18-CV-0025-HRH, 2018 WL 6584474, at *5 (D. Alaska Dec. 14, 2018) (rejecting ALJ's reason for discounting therapist's opinion that therapist must not have understood Social Security definition of degrees of mental impairments because the form the therapist used defined the terms in question). The familiarity factor therefore does not provide a specific and legitimate reason to discredit Dr. Fernandez's MIQ opinion.

B.  Crediting Dr. Fernandez's Opinion, Plaintiff Satisfies Listing 12.03

The Listings discussed above describe "impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functional capacity, past relevant work, or other jobs." Colcord v. Colvin, 91 F. Supp. 3d 1189, 1197 (D. Or. 2015) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). If a claimant's impairment meets or equals one of the listed impairments, and has lasted for a continuous period of at least 12 months, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 416.909, 416.920(d); Bowen, 482 U.S. at 140. A claimant has the burden to establish a prima facie case of disability under the Listings. Burch, 400 F.3d at 679; Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

////

13

In this case, plaintiff contends that when Dr. Fernandez's opinion is given its proper weight, Listing 12.03 (Schizophrenia spectrum and other psychotic disorders) is satisfied. ECF No. 12.1 at 10. The court agrees.

As noted above, Listing 12.03 can be met by satisfying paragraphs A and B, or by satisfying paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 ("Listing 12.03"). Paragraph A requires medical documentation of one or more of the following: "1. Delusions or hallucinations; 2. Disorganized thinking (speech); or 3. Grossly disorganized behavior or catatonia." Id. The paragraph B criteria can be met when a claimant has "extreme limitation of one, or marked limitation of two, of the four areas of mental functioning that the Commissioner is required to consider: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself." Id. (internal citations omitted); see 20 C.F.R. § 416.920a(c)(3). Paragraph C, which applies where claimants have had ongoing medical treatment that diminishes their symptoms, is not at issue here.

It is clear from the record that plaintiff has experienced auditory hallucinations—voices in his head—to varying degrees since 2010. Medical provider notes from plaintiff's visits from July 2014 through April 2017 reflect that plaintiff was hearing negative voices that increased his depression and made it difficult to engage in activities. AR 50, 434, 443, 446, 478, 576, 581. At the February 2017 hearing before the ALJ, plaintiff testified that his depression and "the voices" were the things that caused him the most problems in his daily life, that he was still hearing the voices a couple of hours every day, and that they made it hard for him to concentrate. AR 69-70, 87, 113-15, 140. On the April 12, 2016 MIQ, Dr. Fernandez marked a box specifically indicating that plaintiff's signs and symptoms included "Hallucinations or delusions." AR 581. Thus, plaintiff satisfied the paragraph A criteria of Listing 12.03.

In the MIQ, as previously noted, Dr. Fernandez also opined that plaintiff was "Markedly Limited" both in his capacity for "concentration, persistence or pace" and in "maintaining social functioning." AR 583. Thus, the Paragraph B criteria are satisfied because plaintiff had "marked limitation of two" listed areas of mental functioning. In fact, the MIQ can even be read to demonstrate "extreme" limitations in the cited mental functioning areas. The MIQ's number of

options and definitions of the degree of the functional limitations do not align precisely with the current "five-point rating scale" used to assess the paragraph B criteria. See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(F)(2) ((1) No Limitation; (2) Mild Limitation; (3) Moderate Limitation; (4) Marked Limitation; and (5) Extreme Limitation). The MIQ offered only four rating options: "Not Significantly Limited," "Mildly Limited," "Moderately Limited," and "Markedly Limited." AR 582. The MIQ defined "Markedly Limited" to mean that: "Performance of the designated work-related mental function is totally precluded on a sustained basis and would result in failure after even short durations, for example from 5 to 15 minutes." Id. This definition more closely aligns with the Listings definition of "Extreme limitation," meaning that the claimant is "not able to function independently, appropriately, effectively, and on a sustained basis" than with the Listings definition of "Marked limitation," meaning that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Listings § 12.00(F)(2)(d), (e).

Whether read as supporting two marked limitations or two extreme limitations, Dr. Fernandez's opinions in the MIQ satisfy Paragraph B of Listing 12.03. With both Paragraphs A and B satisfied, and with plaintiff experiencing symptoms for much more than a year, plaintiff's mental impairment meets Listing 12.03, and he must be found disabled under 20 C.F.R. § 416.920(a)(4)(iii), (d) when Dr. Fernandez's opinion is credited.

### C. Remand for an Award of Benefits Is Appropriate

After finding reversible error, the court has the discretion to remand for further proceedings or for immediate payment of benefits. Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009); Harman v. Apfel, 211 F.3d 1172 (1178 (9th Cir. 2000). The court follows a three-step analysis, known as the "credit-as-true" rule, to determine whether a remand for an award of benefits would be appropriate. In applying this test, the court considers whether: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014); see also

Trevizo v. Berryhill, 871 F.3d 664, 682-83 (9th Cir. 2017). Even where all three requirements are met, however, the court retains "flexibility" to remand for further proceedings where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1021; see Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015).

The court concludes that in this case the test is satisfied and that remand for the calculation and award of benefits is warranted. First, the administrative record is extensive and sufficiently developed that remand would not be useful. See Garrison, 759 F.3d at 1021 (rejecting Commissioner's argument that further proceedings would allow the ALJ to revisit the medical opinions rejected for legally insufficient reasons because "remand for the purpose of allowing the ALJ to have a mulligan [does not qualify] as a remand for a 'useful purpose'"). Second, as explained above, the ALJ failed to provide legally sufficient reasons for discounting the informed opinion of plaintiff's primary treating physician, Dr. Fernandez. Third, if Dr. Fernandez's opinion were credited as true, the ALJ would be required on remand to find plaintiff disabled at Step 3 because he met Listing 12.03. Finally, there is no serious doubt based on an evaluation of the record as a whole that plaintiff is disabled because of his schizophrenia spectrum disorder. See Trevizo, 871 F.3d at 683. "[F]urther delays at this point would be unduly burdensome" since plaintiff has already waited over eight years for benefits. Terry v. Sullivan, 903 F.2d 1273, 1280 (9th Cir. 1990); see Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) (remanding for immediate benefits where the claimant had "already waited over seven years for her disability determination").

////
////
////
////
////
////
////
////

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that;

1. Plaintiff's motion for summary judgment (ECF No. 12), is GRANTED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;
3. The matter is REVERSED and REMANDED to the Commissioner for an immediate award of benefits; and
4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

IT IS SO ORDERED.

DATED: July 8, 2019.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE